# Appointment of Vice Chair of Federal Reserve Board to Serve Concurrently as Chair of the District of Columbia Financial Responsibility and Management Assistance Authority

The Vice Chair of the Federal Reserve Board may also serve as Chair of the District of Columbia Financial Responsibility and Management Assistance Authority without violating sections 205 or 208 of title 18. Her dual service would also have to comply with the Federal Reserve Act's "entiretime" requirement.

June 1, 1998

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked for our views on whether the President may appoint Alice Rivlin to be Chair of the District of Columbia Financial Responsibility and Management Assistance Authority (the "Authority"), while Dr. Rivlin continues to serve in her current capacity as Vice Chair and a member of the Board of Governors of the Federal Reserve System (the "Federal Reserve Board"). Upon review of the federal conflict of interest statutes,[1] the prohibition on compensation for dual offices, and the requirements of the Federal Reserve Act, we conclude that the relevant statutory authorities do not prohibit the proposed appointment, but that Dr. Rivlin must continue to perform her duties as Vice Chair of the Federal Reserve Board on a full-time basis. She would thus have to work with the Federal Reserve Board and its General Counsel to ensure compliance with the Federal Reserve Act.

## I. Background

Congress created the Authority in 1995,[2] pursuant to its constitutional authority over the District of Columbia.[3] The Authority is "an entity within the government of the District of Columbia." § 101(a), 109 Stat. at 100. It consists of five members appointed by the President, in accordance with specific statutory criteria,[4] one of whom is designated by the President to be the Chair of the Authority.

---

[1] We have consulted with the Office of Government Ethics with regard to the application of the conflict of interest statutes to this matter

[2] District of Columbia Financial Responsibility and Management Assistance Act of 1995, Pub L No 104–8, 109 Stat 97 (the "D.C. Financial Responsibility Act" or the "Act"). Subsequent to its 1995 enactment, the Act was amended several times in respects not material to the analysis below, unless otherwise cited.

[3] *Id* § 2(c)(2), 109 Stat. at 98 (*citing* U.S Const art 1, § 8, cl 17)

[4] The Act provides that a member of the Authority must be an individual who· "(1) has knowledge and expertise in finance, management, and the organization or operation of business or government, (2) does not provide goods or services to the District government [and does not have a close relative who does so], (3) is not an officer or employee of the District government, and (4) maintains a primary residence in the District of Columbia or has a primary place of business in the District of Columbia." § 101(c), 109 Stat at 101 We understand that you have determined that Dr. Rivlin would meet all of these criteria Accordingly, we do not address her qualifications for appointment

109

*Id.* § 101(b), (c). Congress intended for the Authority to assist the government of the District of Columbia in combating its financial and management problems by developing a "comprehensive approach to fiscal, management, and structural" issues. *Id.* § 2(a)(5), 109 Stat. at 98.

Dr. Rivlin was appointed by the President in 1996 as Vice Chair and a member of the Federal Reserve Board for a term of fourteen years. *See generally* 12 U.S.C. §§ 241–242 (1994).

## II. Conflict of Interest Laws

### A. Section 208 and the Prohibition on Acts Affecting a Personal Financial Interest

Section 208 of title 18 prohibits participation in any "particular matter" that may affect an individual's personal financial interest. The statute applies to any

> officer or employee of the executive branch of the United States Government, or of any independent agency of the United States, a Federal Reserve bank director, officer, or employee, or an officer or employee of the District of Columbia . . . .

18 U.S.C. § 208(a) (1994). A personal financial interest is imputed to an individual if "his spouse, minor child, general partner, organization in which he is serving as officer, director, trustee, general partner or employee" has a financial interest in a matter covered by § 208. *Id.* Thus, the question arises whether the financial interest of the District of Columbia would be imputed to Dr. Rivlin by service on the Authority concurrent with her service in the Federal Reserve Board.

In fact, the statute is not implicated in this circumstance because, for purposes of § 208, the interests of the United States include those of the District of Columbia.[5] By grouping the District of Columbia together with the executive branch, independent agencies and Federal Reserve banks, § 208 effectively defines the interests of the United States that are protected under the statute as including those of the District of Columbia. *See Applicability of 18 U.S.C. § 208 to the Federal Communications Commission's Representative on the Board of Directors of the Telecommunications Development Fund*, 21 Op. O.L.C. 95, 96 (1997) ("FCC Opinion") (§ 208(a) applies only to conflicts between the federal government and outside organizations and does not encompass intra-governmental conflicts between entities covered by the provision).

The inclusion of the District of Columbia along with executive branch entities is not incidental. Before 1989, §§ 203, 205, and 207 of title 18, like § 208, all included the District of Columbia among the federal entities comprising the interests of the United States to be protected by the provisions. *See generally*

---

[5] Section 208, of course, would apply to Dr. Rivlin in her personal capacity.

18 U.S.C. §§ 203, 205, 207 (1988). In 1989, however, Congress amended §§ 203, 205, and 207 to separate the District of Columbia and specifically treat the interests of the District as distinct from those of the United States.[6] Although Congress made other changes to § 208 at that time, it did not alter the treatment of the District. Thus, we may infer that Congress has intentionally treated the interests of the United States and the District as identical for the purposes of § 208.[7]

In addition, our interpretation of § 208 in this circumstance is reinforced by opinions of this Office in connection with the earlier version of § 205 that included that the District of Columbia with the executive departments and agencies. Assistant Attorney General Rehnquist concluded that because the District of Columbia was included with executive departments and agencies in § 205, matters involving the District of Columbia were ones in which the United States had an interest within the meaning of the statute. Letter for Anthony L. Mondello, General Counsel, United States Civil Service Commission, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel (Mar. 26, 1970). This Office reiterated that conclusion on subsequent occasions before the 1989 amendments. *See é.g.*, Memorandum for James L. Byrnes, Associate Deputy Attorney General, from Margaret C. Love, Special Counsel, Office of Legal Counsel, *Re: Request for Approval of Outside Employment* at 1 n.1 (Sept. 24, 1987); *Government Lawyers' Pro Bono Activities in the District of Columbia*, 4B Op. O.L.C. 800 (1980); Memorandum for Daniel Skoler, Director, Office of Law Enforcement Programs, from Thomas E. Kauper, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Determination of Property of Federal Lawyers Representing Children in Juvenile Court Proceedings* (Apr. 7, 1970).

Finally, our conclusion is consistent with the general observation in an earlier opinion that the government ethics rule provide that "employees owe their duty to the government and its citizens, . . . not to the particular bureaucratic interests of their agency." Memorandum for Philip B. Heymann, Deputy Attorney General, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Creation of an Office of Investigative Agency Policies* at 6 (Oct. 26, 1993). Thus, we need not examine here the particular interests of the Authority and the Federal Reserve System; for purposes of § 208, it is sufficient that Congress has treated the interests of the United States and the District of Columbia as singular.[8] *See* FCC Opinion, 21 Op. O.L.C. at 96.

---

[6] *See generally* Ethics Reform Act of 1989, Pub L No 101–194, 103 Stat 1716

[7] *See generally CFTC v Schor*, 478 U S 833, 846 (1986)

[8] Nonetheless, we understand that in order to avoid even the appearance of a conflict between her obligations as Vice Chair of the Federal Reserve Board and Chair of the Authority, it is the intention of the President and Dr Rivlin that in the event that she is appointed as Chair of the Authority, she would recuse herself from all matters relating to the issuance of District of Columbia bonds and the timing and nature of any other investment decisions by the District

**B. Section 205 and the Prohibition of Representation of Non-Federal Interests**

Section 205 of title 18 prohibits any "officer or employee of the United States in the executive, legislative, or judicial branch of the Government or in any agency of the United States" from, *inter alia*, acting as an

> agent or attorney for anyone before any department, agency, court, court-martial, officer, or civil, military, or naval commission in connection with any covered matter in which the United States is a party or has a direct and substantial interest.

18 U.S.C. § 205(a)(2) (1994). Unlike § 208, as we have already noted, § 205 treats the District of Columbia separately from the United States and, thus, for purposes of this statute, the interests of the District and the federal government are not identical. The separate treatment of the United States and the District of Columbia under § 205 raises the question whether Dr. Rivlin, as an officer of the United States covered by § 205(a) in her capacity as Vice Chair of the Federal Reserve System, may represent the interests of the Authority before any "department [or] agency" of the federal government, because the Authority is identified in the statute creating it as an entity of the District of Columbia government. § 101(a), 109 Stat. at 100.

We understand, as a preliminary matter, that the duties of the Chair of the Authority will invariably involve the kinds of activities that, if done on behalf of a truly non-federal entity, would constitute acting as an agent before departments and agencies of the executive branch.[9] Indeed, an express purpose of the Authority is to assist the District of Columbia in "achieving an appropriate relationship with the Federal Government," § 2(b)(4)(B), 109 Stat. at 98, and the Authority is directed by statute to make recommendations to, among others, the President. § 207(a), 109 Stat. at 133.

In addition, we assume for purposes of this analysis that the matters in which the Chair may engage in covered representational activities are ones in which the United States has a "direct and substantial interest." An express duty of the Authority is to examine, and make recommendations regarding, the "programmatic and structural relationship between the District government and the Federal Government." *Id.* §§ 2(b)(7), 109 Stat. at 99, 207(a)(2). The D.C. Financial Responsibility Act also observes that the problems of the District affect the "efficient operation of the Federal Government." *Id.* § 2(a)(9), 109 Stat. at 98. Moreover, the Authority is a creature of Congress's Article I power over the District and, we assume that any matters that might require or impel the Chair to

---

[9] Although the Chair is also likely to represent the Authority before members of Congress, § 205 does not cover such representational activities and, thus, this important aspect of the Chair's duties is not implicated here

represent the Authority before any executive department or agency would, in all reasonable likelihood, be ones that involved the interests of the United States.

Our analysis of § 205 turns on the nature of the interests to be represented by the Chair of the Authority. Notwithstanding that the Authority was established as an "entity within the government of the District of Columbia," the D.C. Financial Responsibility Act, taken as a whole, reflects the peculiarly federal nature of the Authority and leads to the conclusion that the interests to be represented by the Chair and members of the Authority are, for purposes of § 205, the interests of the United States. Thus, Dr. Rivlin's service as Chair of the Authority would not be inhibited by § 205.[10]

As we have observed, the Authority is a product and instrument of Congress's constitutional authority over the District of Columbia. The statute itself and its legislative history indicate clearly that the Authority was "created as part of the federal government's responsibility for governing the District of Columbia," and that "[w]hile the Authority is established as part of the District of Columbia government," it was Congress's "strong" intention that it "function and operate in an independent oversight capacity" separate and apart from the existing District government. H.R. Rep. No. 104–96, at 34, 52 (1995); *see* § 2(b), 109 Stat. at 98–99.

For example, it is significant that the statute defines the government of the District of Columbia to exclude the Authority. § 305(5), 109 Stat. at 152. Among the principle functions of the Authority is overseeing the creation of, and compliance with, a financial plan and budget for the District. *See generally id.* §§ 201–204, 109 Stat. at 108–19. In this regard, the Authority must approve any financial plan and budget before it is effective, *id.* § 201, and *no* bill passed by the District of Columbia Council and signed by the Mayor (or passed over the Mayor's veto) may take effect without the approval of the Authority. *Id.* § 203. The Authority is subject only to those District of Columbia laws that Congress has specified in the Act and, in general, "[n]either the Mayor nor the Council may exercise any control, supervision, oversight, or review of the Authority or its activities." *Id.* § 108(b)(1), 109 Stat. at 107. In any action brought by or against the Authority, the Authority is to be represented by counsel of its choosing and "in no instance may the Authority be represented by the Corporation Counsel of the District of Columbia." [11] *Id.* § 108(c).

---

[10] Of course the requirements of § 205 would continue to apply to Dr Rivlin in her personal capacity

[11] There are additional features that reflect the separation of the Authority from the District of Columbia For example, no officer or employee of the District government is eligible for appointment to the Authority. § 101(c)(3), 109 Stat. at 101. The staff of the Authority may be appointed and paid without regard to the provisions of the D C Code and the procurement laws of the District do not apply to the Authority *Id* § 102(c)(2), 109 Stat at 102 The Authority is not liable for any obligations or claim against the District of Columbia. *Id.* § 104, 109 Stat. at 105, *amended by* Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub L No 104–134, 110 Stat 1321–106 The District may not borrow money, in certain circumstances, without the consent of the Authority § 204, 109 Stat at 119

In addition to being distinct from the District government, the federal nature of the Authority is evidenced by the fact that the Authority's powers are delegated and vested by federal statute, pursuant to specific constitutional authority, in individuals who are appointed by the President of the United States. Within this rubric of federal authority are specific provisions further reflecting the federal character of the Authority, as well as its separateness from the District. For example, the annual Federal payment to the District is, pursuant to the Act, deposited into an escrow account held by the Authority, to then be allocated to the District government in the Authority's discretion. *Id.* § 205(a)(1), 109 Stat. at 131.

Furthermore, any action brought against the Authority or otherwise arising, in whole or in part, out of the D.C. Financial Responsibility Act, must be brought in federal, rather than District of Columbia, court. *Id.* § 105(a), 109 Stat. at 105. The Authority is vested also with federal subpoena power. It may issue subpoenas and enforce them in the district courts of the United States under the Federal Rules of Civil Procedure. *Id.* § 103(e), 109 Stat. at 103. A review of the D.C. Financial Responsibility Act reveals a host of other examples.[12]

We also observe that our conclusion here is in accord with the interpretation that this Office has applied to § 205 in an analogous circumstance. This Office has previously concluded that § 205 does not prohibit a federal employee who is detailed to a state agency from representing the state agency before the federal agency from which he was detailed, where the detail and the representation of the state's interests are made in connection with a statutory scheme the purposes of which would be furthered by such representational conduct. *See generally Application of 18 U.S.C. §§ 203 and 205 to Federal Employees Detailed to State and Local Governments*, 4B Op. O.L.C. 498 (1980). Here, the D.C. Financial Responsibility Act provides for extensive cooperation between the Authority and federal agencies, including the provision of federal data and the detailing, even on a non-reimbursable basis, of federal employees to assist that Authority. In addition, although the Act prohibits employees of the District of Columbia government from serving on the Authority, it applies no such limit to the service of federal officials and employees. The general purposes of the Act and certain of its specific provisions suggest that the appointment of a federal official to the Authority and her representation of the Authority before federal agencies is consistent with, and would effectuate the purposes of, the Act.

---

[12] *See e.g.*, § 102(d), 109 Stat at 102 (upon request of the Chair, any Federal department or agency may detail its personnel to the Authority on a reimbursable or non-reimbursable basis to assist the Authority); *id.* § 102(e), *amended by* 110 Stat. at 1321–103 (federal employees who are employed by the Authority are treated as continuing their federal employment for purposes of the federal retirement system); *id.* (those Authority employees who join in the federal government upon leaving the Authority are entitled to credit for the full period of the individual's service with the Authority for purposes of determining federal leave); *id* § 103(f), *amended by* 110 Stat at 1321–102 (the Authority is authorized to procure from the General Services Administration any administrative support services that it may need); *id* § 103(c)(1), 109 Stat at 103 (the Authority is empowered to "secure directly" from any federal department or agency, with consent, any information it deems necessary to carry out its duties).

Because the Authority is an instrument of Congress's constitutional authority over the District of Columbia, a creature of federal law, vested with material attributes of federal authority, clearly and expressly distinct from the District of Columbia government, and composed of members appointed by the President, we conclude that the interests to be represented by the Authority are, for purposes of § 205, federal interests. Thus, if appointed as Chair of the Authority, Dr. Rivlin's dual service would not implicate § 205.

## III. Dual Office-Holding

The fact that Dr. Rivlin would serve concurrently as Vice Chair of the Federal Reserve Board and Chair of the Authority raises the question whether this dual office-holding violates federal law. As a statutory matter,[13] a federal official is precluded from receiving compensation from more than one office. 5 U.S.C. § 5533 (1994 & Supp. IV 1997). This Office has previously observed that the repeal in 1964 of earlier legislation that prohibited dual office-holding, coupled with the enactment of the current provision barring only dual compensation, impliedly permits the concurrent holding of two offices so long as there is no dual compensation involved. Memorandum for James H. Thessin, Deputy Legal Advisor, from Randolph D. Moss, Deputy Assistant Attorney General, *Re: Dual Office-Holding* at 2 (Dec. 3, 1997) ("Dual Office-Holding Opinion"); Memorandum for Philip B. Heymann, Deputy Attorney General, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Creation of an Office of Investigative Agency Policies* (Oct. 26, 1993) ("Investigative Agency Opinion"); *Dual Office of Chief Judge of Court of Veterans Appeals and Director of the Office of Government Ethics*, 13 Op. O.L.C. 241, 242 (1989). The proposed appointment of Dr. Rivlin would not violate the prohibition on dual compensation because the Chair and all members of the Authority serve without pay. § 101(d), 109 Stat. at 101.

Nor would Dr. Rivlin's dual office-holding run afoul of the incompatibility doctrine, which precludes dual office-holding arrangements when a single individual would be authorized by virtue of one office to review her own actions taken in the capacity of her other office.[14] *See generally* Investigative–Agency Opinion at 6–8. Here, the two offices in question are not connected by any review authority that would implicate the incompatibility doctrine. *See* Memorandum for Arnold Intrater, General Counsel, Office of White House Administration, from John O.

---

[13] The Incompatibility Clause of the Constitution, U S Const art I, § 6, cl 2, forbids members of Congress from holding any office under the United States Neither the Incompatibility Clause nor any other constitutional provision bars an executive branch official from holding two offices

[14] While this Office has continued to refer to the incompatibility doctrine in its opinions, we have reorganized that "[i]t is arguable that it has either fallen into desuetude or been repealed by statute " Memorandum for Edward C Schmults, Deputy Attorney General, from Theodore B Olson, Assistant Attorney General, Office of Legal Counsel, *Re Appointment of D Lowell Jensen as Associate Attorney General* at 3, 4 (June 14, 1983) ("Associate Attorney General Opinion"); *see* Dual Office-Holding Opinion at 4 (quoting Associate Attorney General Opinion)

McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Dual Office of Executive Secretary of National Security Council and Special Assistant* (Mar. 1, 1988) (no incompatibility problem where office was not designed as check on the other); Memorandum for Fred F. Fielding, Counsel to the President, from Ralph W. Tarr, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Availability of Hatch Act Exemption for Individual Holding Dual Appointments as a Member of the White House Staff and Director of the White House Conference on Productivity* at 4 (Aug. 22, 1983) (finding no incompatibility problem because neither office is "formally subordinate to the other"); *Appointment of Deputy Director of the Council on International Economic Policy (CIEP) by Its Executive Director*, 1 Op. O.L.C. 28 (1977) (finding offices incompatible where official would be required to review his own actions).

## IV. Requirement that Federal Reserve Board Members Devote Their "Entire Time" to the Business of the Board

As a member of the Federal Reserve Board, Dr. Rivlin is required under § 241 of title 12, to "devote [her] entire time to the business of the Board." On its face, this requirement would not necessarily prohibit Dr. Rivlin from serving on the Authority, although her performance of the responsibilities of her dual offices must comply with the "entire-time" requirement. "This provision has not been interpreted so literally as to preclude Board members from serving as members of commission or committees of a governmental or quasi-governmental nature established by statute or by Executive Order." Memorandum for Governor Brimmer, *Re: Service as member of Advisory Committee on Regional Economic Development* (July 21, 1967) ("Opinion of Federal Reserve Board").

This Office has previously reviewed a comparable requirement in another statute in circumstances similar to those addressed here. Memorandum for the Attorney General, from W. Wilson White, Assistant Attorney General, Office of Legal Counsel, *Re: Appointment of University Dean as member of Tennessee Valley Authority* (Nov. 8, 1957) ("TVA Opinion") (whether university dean, on leave from university, could serve concurrently on the TVA and an advisory board to the Department of Agriculture). There, a federal official was subject to a prohibition that he not "be engaged in any other business" outside of official duties. TVA Opinion at 1 (quoting 16 U.S.C. § 831a(f)). The analysis of the TVA Opinion turned on the determination, principally a factual one, whether the second position is part-time and may be performed without impairing the full-time responsibilities imposed by the primary office. TVA Opinion at 2; *see also* Memorandum for Larry Eugene Temple, Special Counsel to the President, from Frank M. Wozencraft, Assistant Attorney General, Office of Legal Counsel, *Re: Dual service as an Executive Director of the Inter-American Development Bank and a Director of the Export-Import Bank of Washington* (Feb. 16, 1968) ("Export-

Import Bank Opinion'') (analyzing, on factual grounds, whether service on an advisory committee was compatible with full-time nature of federal official's duties).

As we have already noted, the Chair of the Authority is an uncompensated position, § 101(d), 109 Stat. at 101, suggesting that it may be filled on a part-time basis. Moreover, we understand that the President and Dr. Rivlin intend that the position of Chair of the Authority be treated as a part-time position, emphasizing the temporary nature of the Authority and its role in shifting responsibility to the District government. *See id.* § 107, 109 Stat. at 106. You have explained that Dr. Rivlin would seek adequate support and staffing to ensure that hers is an oversight role compatible with part-time responsibilities.[15]

This Office did not interpret the comparable full-time requirement for service on the TVA as ''an absolute bar'' to any outside activities. TVA Opinion at 2. Rather, because the duties of the second, part-time position would be ''occasional'' and ''intermittent,'' the TVA Opinion treated these features as evidence suggesting that the position would be compatible with the official's full-time obligations. In addition, the TVA Opinion treated the uncompensated nature of the secondary position as prima facie evidence that it is a part-time position compatible with full-time duties. TVA Opinion at 2; *see also* Export-Import Bank Opinion at 2.

The Federal Reserve Board analyzes its entire-time requirement based upon whether (1) the duties of the additional position would ''substantially affect the Board member's ability to give full attention to the affairs of the Board,'' (2) whether the second position was ''completely foreign or unrelated to the Board's work,'' and (3) whether the duties of the second position ''would in any way involve a conflict of interest, *i.e.*, duties inconsistent with [the] duties [of] a Board member.'' Opinion of Federal Reserve Board at 1. The first of these factors is similar to that which this Office used in assessing the application of a comparable full-time requirement, and the third factor, concerning conflicting duties, is addressed above in this memorandum. The second factor has been applied by the Federal Reserve Board to permit a Board member to sit on the National Public Advisory Committee on Regional Economic Development, based on the reasoning that, inter alia, the functions of the regional economic committee ''may not be directly related to the functions of the [Federal Reserve] Board, but, on the other hand, they are obviously not unrelated to the Board's functions, since the basic purpose of the Economic Development Act [creating the committee] is to maintain the national economy at a high level and particularly to alleviate unemployment in certain areas of the country through Federal financial assistance for public works and development facilities.'' Opinion of Federal Reserve Board at 2. Simi-

---

[15] Although we understand that the current Chair of the Authority has performed his functions in a full-time capacity, our conclusion is not altered. The Export-Import Bank Opinion observed that notwithstanding the fact that the previous occupant had treated the office as full-time, there was sufficient evidence that the position could be performed on a part-time basis Export-Import Bank Opinion at 2

larly, the Authority is charged with modifying and managing the District's fiscal policies, *see* § 2, 109 Stat. at 98, and Congress regarded such fiscal change as necessary to the "long-term economic health" of the region. *Id.* § 2(a)(8). Ultimately, however, this analysis is factual and forward looking and Dr. Rivlin would need to work with the Federal Reserve Board and its General Counsel to comply with the "entire-time" requirement.

## V. Conclusion

For the reasons stated, we conclude that Dr. Rivlin's dual service as Vice Chair of the Federal Reserve Board and Chair of the Authority would be consistent with 18 U.S.C. §§ 205 and 208. Her dual service would also have to comply with the Federal Reserve Act's "entire-time" requirement.

TODD DAVID PETERSON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
